IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division



| UNITED STATES OF AMERICA | |
|---|---|
| v. | Criminal No. 1:18-mj-538 |
| Hoa Wang, and | |
| Xufeng Ao, | |
| *Defendants.* | |

### AFFIDAVIT IN SUPPORT OF
### ARREST WARRANT AND CRIMINAL COMPLAINT

I, John Diffley, being duly sworn, depose and state as follows:

### Introduction and Agent Background

1.   I am a Detective with the Fairfax County Police Department ("FCPD"), where I have been employed since 2007. I have been assigned to the Organized Crime and Narcotics Section for the past three years and I have specifically worked on narcotics trafficking and money laundering cases. I have received training on the investigation of criminal activity, including fraud, money laundering and structuring. I have participated in hundreds of criminal investigations and I been involved in the arrest of numerous individuals for narcotics trafficking and other crimes. Since May 2016, I have been assigned to the High Intensity Drug Trafficking Area ("HIDTA") Task Force in Annandale, Virginia, on a project investigating possible money laundering, structuring, and other illegal financial activity, specifically violations of Title 18 U.S.C. §§ 1956, 1957, and 1960, and 31 U.S.C. §§ 5316, 5324, and 5330. I am deputized by the United States Marshals Service as part of this task force in support of this endeavor.

2.  This affidavit is intended to show only that there is sufficient probable cause for the affidavit in support of the criminal complaint and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

3.  The Controlled Substances Act ("CSA") prescribes federal U.S. drug policy under which the manufacture, importation, possession, use, and distribution of certain substances is regulated. The CSA classifies drugs, substances or chemicals into five schedules. The drugs, substances, or chemicals with no current acceptable medical use and a high potential for abuse are classified as Schedule I drugs. Schedule I drugs are considered to be the most dangerous drugs of all the drug schedules, given the potential for severe psychological or physical dependence. Marijuana and tetrahydrocannabinol ("THC") oil are classified as Schedule I controlled substances, as defined by 21 U.S.C. § 812.

4.  Pursuant to 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Pursuant to 21 U.S.C. § 846, it is unlawful for anyone to attempt or conspire to commit a violation of 21 U.S.C. § 841(a)(1).

5.  Based on my training and experience and the facts as set forth in this affidavit, I submit that there is probable cause to believe that the defendants have committed violations of 21 U.S.C. §§ 841(a)(1) and 846.

## Statement of Probable Cause

6. Beginning in or about May 2018, agents from the Homeland Security Investigations ("HSI"), Washington, D.C. Division, and the Fairfax County Police Department (FCPD) have conducted a joint investigation into the distribution of THC oil vape pen cartridges and marijuana by an individual, referred to herein as Co-Conspirator 1 (CC-1) of Centreville, Virginia.

7. On August 1, 2018, law enforcement officers conducted an undercover purchase of approximately 250 THC oil vape cartridges and approximately one pound of marijuana from CC-1 at a location in McLean, Virginia, within the Eastern District of Virginia. An undercover law enforcement officer provided CC-1 a partial payment for the controlled substances of $2,500.00 via Venmo, an online payment service. The remaining amount owed to CC-1 was $5,500.00.

8. On August 6, 2018, an undercover law enforcement officer sent a text message to CC-1, requesting to pay the remaining balance of $5,500.00 via cryptocurrency. CC-1 directed the undercover law enforcement officer to send the remaining balance to him (CC-1) via Litecoin and provided a Litecoin address to receive the payment.

9. On August 8, 2018, an undercover law enforcement officer sent approximately 87.72526083 Litecoin, which was worth approximately $5,549.50 at the time of payment, to the Litecoin wallet address that CC-1 provided on August 6, 2018.

10. On September 11, 2018, law enforcement officers conducted an undercover purchase of approximately 300 THC oil vape cartridges from CC-1 at a location in McLean, Virginia, in exchange for $1,250.00 United States currency and approximately $6,300.00 worth of Litecoin. CC-1 provided a Litecoin wallet address to an undercover law enforcement officer to receive the Litecoin payment. The wallet address was the same address that CC-1 provided

for the Litecoin payment made to CC-1 on August 8, 2018. An undercover law enforcement officer sent CC-1 approximately 122.68743914 Litecoin, which was worth approximately $6,300.00 at the time of the payment.

11. On October 5, 2018, Coinbase, an online digital currency exchanger, returned records pursuant to an administrative subpoena. Coinbase confirmed the existence of CC-1's account, in addition to identifying the final numbers of CC-1's account "e01c482d833." The records show that CC-1 opened the TARGET ACCOUNT on November 26, 2017, tied to an address in Herndon, Virginia.

12. Coinbase also confirmed that account ending in "e01c482d833" contains a digital currency balance of 333.42450399 Litecoin, which had an approximate value of $17,000 United States Dollars on that day. A review of the account history revealed that on August 6, 2018, CC-1 created the Litecoin wallet address for receipt of payment on two separate occasions for controlled substances. The account history also shows that the TARGET ACCOUNT received two Litecoin payments from an undercover law enforcement officer on August 8, 2018 and September 11, 2018.

13. On October 24, 2018, an undercover law enforcement officer conducted a purchase of approximately 2,000 THC oil vape pen cartridges from CC-1 for an estimated street value of $30,000.00. CC-1 directed the undercover law enforcement officer to meet him at a location in Centreville, Virginia. The officer met CC-1 at the specified location and received approximately 2,000 THC oil vape pen cartridges from CC-1. Immediately following the transaction, FCPD officers arrested CC-1. CC-1 was transported to the FCPD station for questioning.

14. CC-1 was read his Miranda warning and signed a waiver form indicating he agreed to speak with agents without a lawyer present. Upon questioning, CC-1 gave a detailed statement regarding the purchases outlined above. CC-1 described two co-conspirators as his source of supply for the THC oil and other illegal narcotics. CC-1 stated that he believed that one of the individuals went by the name "Justin" or "Ha" and he described both individuals as middle-aged Asian males. CC-1 explained that the aforementioned transactions occurred in and around the Rockville, Maryland area. During these transactions, CC-1 stated that he would mainly contact "Ha" through a cell phone messaging application known as Signal, which is an encrypted messenger application. CC-1 stated that on all but one occasion, the second co-conspirator was present for the transactions.

15. CC-1 additionally provided a detailed response to questions regarding an October 24, 2018, transaction where CC-1 received a shipment of approximately 2,000 THC oil vape pen cartridges from "Ha" and the other co-conspirator. CC-1 stated that he met "Ha" and the other co-conspirator at the Red Roof Inn Plus in Rockville, Maryland (located off Shady Grove Road), at approximately 11:30 a.m. CC-1 stated that he met the two individuals in the parking lot area. The two individuals were seated in a newer model, silver dodge caravan with out of state registration. CC-1 stated that he observed suitcases and items consistent with individuals in transit inside the vehicle. CC-1 stated that both of the individuals had some type of connection to the New York City area.

16. Following the interview of CC-1, an agent assisting in the investigation obtained records from the Red Roof Inn located at 16001 Shady Grove Road, Rockville, Maryland 20850. In addition, the agent obtained video surveillance captured by cameras located at the entryway of the Red Roof Inn. A review of the video footage at approximately 11:30 a.m. revealed that a

silver minivan pulled up to the front entryway. An Asian male individual was observed exiting the vehicle and communicating to a possible second subject. The Asian male then entered the Red Roof Inn, and proceeded to the check-in counter.

17. The agent obtained a guest list of the individuals who checked in and out of the Red Roof Inn at approximately 11:30 a.m. Using law enforcement databases, law enforcement cross-checked the provided guest names of the hotel guests during the aforementioned timeframe. Law enforcement presented three photographs of individuals matching the ethnicity of the Asian male who appeared on surveillance footage during the aforementioned time frame to CC-1 during a subsequent debrief. These photos were not shown in any particular order or presented in a particular manner. As CC-1 flipped through the photographs, he selected an Asian male wearing a dark-colored jacket as the co-conspirator that was with "Ha" during the October 24, 2018, meeting described above.

18. With this information, agents followed up again with Red Roof Inn staff and were able to match video surveillance with check-in paperwork to identify the person in the surveillance footage as Xufeng AO ("AO"). The check-in documents included a California driver's license number for AO that matched information for AO in law enforcement databases and California Department of Motor Vehicles image records for AO. Using the listed telephone number of AO's check-in documents, a cross-check of law enforcement databases identified a second possible involved individual. During this database check, an image was obtained from the California Department of Motor Vehicles. This image was also presented to CC-1, who confirmed that this was the second co-conspirator, who he knew by the name "Justin" or "Ha." The image that agents obtained from the California Department of Motor Vehicles produced the customer information for the second co-conspirator, Hao WANG ("WANG").

19. On or about October 30, 2018, CC-1 advised this agent that WANG communicated with him via Signal. WANG told him that in a few days, he was going to be in the Northern Virginia area for a few nights before traveling to Los Angeles, California. A query of law enforcement databases revealed a flight reservation for a one-way voucher for WANG departing from John Fitzgerald Kennedy International Airport in New York to Los Angeles International Airport in California for November 3, 2018. An agent assigned to the JFK International Airport confirmed that WANG boarded the flight from JFK to LAX on November 3, 2018.

20. On or about November 2, 2018, CC-1 advised this agent that WANG communicated with him via Signal, explain that he (WANG) would be able to meet CC-1 on Tuesday (November 6, 2018) and that he would have approximately 15 "packs." Based on my training and experience, I know that the term "packs" is used by those involved in the distribution of marijuana to describe pounds—one pack equals one pound of marijuana.

21. On or about November 5, 2018, CC-1 advised this agent that WANG communicated with him via Signal, explaining that he (WANG) would only be in the Northern Virginia area until mid-day on Thursday, November 7, 2018.

22. On or about November 8, 2018, the defendants, CC-1 arranged a purchase of approximately 25 pounds of marijuana and 2,000 THC vape pens from Wang. This deal was arranged to take place in the College Park, Maryland area. CC-1 redirected Wang to a Marriott hotel in Montgomery County, Maryland.

23. Law enforcement observed Wang arrive at the Marriott hotel in a dark colored minivan with New York license plates. Wang and Ao were observed exiting the vehicle carrying a large black duffel bag and a tan colored cardboard box. Wang also had a black backpack.

7

24. At the pre-arranged meeting time, Wang waited in the check-in area of the hotel, while Ao proceeded to check into a room at the hotel. Wang contacted CC-1 by telephone to give him the room number for the room Ao checked into at the hotel. Law enforcement observed CC-1 and Wang meet outside the check-in area of the hotel.

25. Once making contact, both CC-1 and Wang proceeded to the room occupied by Ao. CC-1 had audio recording equipment on his person, and law enforcement agents overheard the three discussing the THC vape pens and the grade and type of marijuana. Wang asked CC-1 where the money was for the transaction and CC-1 responded that it was outside in his vehicle and he would give it to him once he checked on the type of product that he was receiving.

26. CC-1 and Wang left the room, exited the hotel, and approached the dark colored minivan, which Wang had arrived in. At the rear passenger door, Wang showed CC-1 the THC vape pens. At this point, law enforcement arrested Wang.

27. Ao was subsequently arrested in the hotel room. Both individuals where taken back to HSI DC office for interviews. Agents seized approximately 30 pounds of suspected marijuana, over 3,000 THC vape pens, approximately $19,000 in United States currency and approximately $10,000 in money orders.

## Conclusion

22. Based on the facts set forth above, there is probable cause to believe that the defendant has committed the felony crime of conspiracy to possess with the intent to distribute marijuana, a Schedule I a controlled substance, in violation of 21 U.S.C. § 846.

_____
John Diffley
Task Force Officer
United States Secret Service
United States Marshal Service Task Force

Sworn to and subscribed to before me
this 9th day of November, 2018, in Alexandria, Virginia.

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge

The Honorable Michael S. Nachmanoff
United States Magistrate Judge